**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**UNITED STATES OF AMERICA,**

**VS.**                                                   **CRIMINAL ACTION NO. 4:06CR124-P-D**

**WILBUR TYRONE PEER, ET AL.,**                                     **DEFENDANTS.**

**ORDER**

These matters come before the court upon Defendant Wilbur Tyrone Peer's Omnibus Motion to Dismiss, or, in the Alternative, Motion for Bill of Particulars, Motion to Strike, Motion in Limine, and Motion for Discovery and Inspection [142]. After due consideration of the motions and the responses filed thereto, the court finds as follows, to-wit:

**1. Motion to Dismiss**

Defendant Peer moves to dismiss Counts 1 and 11 against him, arguing that the indictment insufficiently charges him with conspiring pursuant to 18 U.S.C. § 371 to violate 18 U.S.C. § 1014 and/or he is the victim of vindictive prosecution. The court notes that Count 11 was dismissed for lack of venue on September 3, 2008. Therefore, at issue is Count 1.

Count 1 itself charges all of the defendants with conspiring to violate 18 U.S.C. § 1014 by making false statements and overvaluing land on a loan application. More specifically, Count 1 states in pertinent part that:

> [D]efendants herein, knowingly and willfully conspired with each other and persons known and unknown to the grand jury, to make material false statements and reports and willfully overvalue land, property, and security, for the purpose of influencing the action of the Rural Development Administration and Gulf Coast Bank and Trust Company, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, in

violation of 18 U.S.C. § 1014.

Section 1014 provides in pertinent part: "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purposes of influencing in any way the action of ... the Rural Development Administration ... [or] any institution the accounts of which are insured by the Federal Deposit Insurance Corporation ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, [or] loan ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both." 18 U.S.C. § 1014.

The plain language of § 1014 does not make it a violation to consummate a defrauding of the government by actually obtaining a loan, the application for which contained false statements and/or willfully overvalued property as collateral. One could make false statements on a loan application and *not* be approved to receive the loan and still violate § 1014. It is the making of false statements or overvaluing property on the application itself that is violative of §1014. For an action to constitute an overt act in furtherance of a conspiracy to violate §1014, the action must further the goal of conspiring to make a false statement on a loan application, not necessarily the ultimate goal of obtaining the government-subsidized loan. Thus, in theory, even if there were evidence that one or more of the conspirators bribed a federal official to ensure the conspirators *obtained* the loan before they filed the application, such a bribery is not an overt act in conspiring to make a false statement or overvaluing land on the loan application. In other words, the plain language of §1014 does not make bribery in and of itself a "false statement or report" meant to ensure the loan is approved. One could also submit a loan application without any false statements on the application, bribe a federal official to obtain the loan, and not violate §1014.

In its October 14, 2008 Order granting the co-defendants' motion to strike overt act number 16 and motion to exclude testimony of alleged post-loan application bribery discussions by defendants as inadmissible hearsay, the court concluded pursuant to *U.S. v. Davis*, 533 F.2d 921 (5th Cir. 1976) that even if the alleged bribe were considered an overt act in furtherance of the conspiracy to violate § 1014, the bribe itself took place well after the loan application was filed (which is when the alleged violation of § 1014 was consummated). Therefore, the court concluded that the decision in *Davis* strongly suggests that a bribery allegation cannot be used as an overt act in furtherance of a conspiracy to violate § 1014 when the bribery took place after the substantive violation of § 1013 occurred.

However, the court clarifies that this is not to prevent the Government from offering evidence that a bribe was *offered* to Peer by one or more co-conspirators to aid the conspiracy to make false statements and/or overvalue property on the subject loan application – as long as such overtures were made before the loan application was filed. The reason the court struck over act number 16 was that it spoke to the actual payment of the bribe, which the court has already ruled pursuant to *Davis* is inadmissible because the alleged payment of the bribe occurred on February 4, 2001 – as stated in the Indictment – after the loan application was filed. Similarly, the subject conversations of the co-conspirators were excluded because they were alleged to have occurred on or about February 4, 2001.

Defendant Peer insists in the instant motion that Count 1's conspiracy charge only involves the alleged bribe paid to him and contains no allegations that he was involved in conspiring to actually violate § 1014 – that is, that he conspired with the co-defendants to make false statements and/or overvalue land on the subject loan application. Therefore, Peer argues, Count 1 should be
3

dismissed as to him.

>The Government argues that Peer has misconstrued the charges against him because:
>
>It is not simply receiving the bribe that constituted an illegal act for which he is charged, but the acts he committed *in order to receive the bribe*. Among those acts, of course, included acts to further the purpose and plan of the conspiracy – that is, to willfully overvalue land, property, and security, for the purpose of influencing the action of the Rural Development Administration and Gulf Coast Bank and Trust Company, in violation of 18 U.S.C. §§ 371 and 1014.

Government Response at 3. The Government argues further that the Indictment sufficiently allows Peer to be aware of the charges against him because in the "Objectives of the Conspiracy" section, the Indictment states that "[f]rom the beginning, the defendants agreed to pursue a guarantee under this program." Indictment at 2. Furthermore, on pages 3 and 4, the Indictment alleges:

>To make certain that the federal government would approve the B&I loan, Jimmy Winemiller, Michael Winemiller, and Rabhan enlisted the help of Peer, Jimmy Winemiller's friend and would-be business associate. At the time that this loan was being discussed, Peer was employed with the U.S.D.A. in Washington, D.C. Specifically, Peer's position was described as Associate Administrator at the U.S.D.A., Rural Business Cooperative Services. Actually, when PEER approve the loan at issue he was the Acting Administrator. In essence, it was one of Peer's duties to determine whether government guarantees – such as the one being sought by his friend, Jimmy Winemiller – were to be approved or not. Because these various criteria had to be met before the transaction could occur and the government would guarantee ninety percent of the GCBT loan, **the parties conspired to make it appear as if the criteria were sufficiently met when, in reality, they were not**.

Indictment at 3-4 (emphasis added).

The Government also avers that, as alleged in the Indictment, a significant portion of the conspiracy charge concerns the overvaluation of catfish, and that the Government has substantial evidence that Peer performed many of steps taken to overvalue the catfish. The Government argues that although these specific acts allegedly done by Peer are not detailed in the Indictment, the Government is under no obligation to do so since all that must be proved for a conviction is that "one

4

of the conspirators ... knowingly committed at least one overt act charged in the indictment ... [and] that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy charged," citing *U.S. v. Kraig*, 99 F.3d 1361, 1368 (6th Cir. 1996).

Federal Rule of Criminal Procedure 7(c)(1) provides in pertinent part: "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."

"An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant what charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions for the same offense." *U.S. v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "Test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id*. "[I]t is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense." *Id*. "The language must be sufficient to inform the accused of the specific offense with which he is charged." *Id*. at 1170.

Having considered the Indictment and the parties' arguments, the court concludes that the Count 1 sufficiently informs Peer that he is charged with conspiring to violate § 1014 in that he conspired with the other defendants to make false statements and/or overvalue land in connection with the subject loan application. Any evidence the Government may have demonstrating that Peer was offered a bribe before the loan application was filed that is directly tied to a conspiracy to make false statements and/or overvalue property on the loan application may be relevant and admissible regarding the conspiracy charge against all co-conspirator defendants, including Peer. However,

evidence of the actual payment of the bribe and conversations that took place after the loan application was filed is inadmissible.

Accordingly, Peer's motion to dismiss for insufficient indictment language should be denied.

With regard to Peer's motion to dismiss based on vindictive prosecution, the court concludes that the argument is without merit. Defendant has not established that he was charged in Count 1 by actual prosecutorial vindictiveness or that there is a reasonable likelihood of such vindictiveness. Contrary to Peer's argument, the indictment was not insufficient on its face and sufficiently stated a charge of conspiring to violate § 1014 by making false statements and/or overvaluing land in connection with the subject loan application. Accordingly, Peer's motion to dismiss should also be denied in this regard.

**2. Motion for Bill of Particulars**

"A bill of particulars is not required if a defendant is otherwise provided, *inter alia*, with sufficient information to enable him to prepare his defense and avoid surprise." *U.S. v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991). "A defendant should not use the Bill of Particulars to 'obtain a detailed disclosure of the government's evidence prior to trial.'" *U.S. v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978).

Since the court has concluded that the indictment provides sufficient information to enable Peer to prepare his defense and avoid surprise regarding Count 1's conspiracy to make false statements and/or overvalue property in connection with the subject loan, the court concludes that the Government is not required to obtain a more detailed disclosure of its evidence prior to trial.

### 3. Motion to Strike Surplusage

Defendant Peer's motion to strike overt act number 16 should be denied as moot because the court struck overt act number 16 regarding the alleged bribe by Jimmy Winemiller to Defendant Peer in its October 14, 2008 Order.

### 4. Motion for Discovery and Inspection

The court concludes that this motion should be denied at this time and reasserted separately to the U.S. Magistrate Judge.

### 5. Motion in Limine and Motion for a James Hearing

Defendant Peer moves pursuant to *U.S. v. James*, 590 F.2d 575 (5th Cir. 1979) for a hearing prior to trial to determine the admissibility of the anticipated testimony of Gregory Paul McMillon, a co-conspirator who has already pled guilty to conspiring with others to violate § 1014 in connection with the subject loan in this case. The court concludes that this motion should be denied as premature. In the event the Government seeks to introduce testimony from McMillon, the court will determine the admissibility of that testimony at that time.

As the Fifth Circuit noted in *U.S. v. Fragaso*, 978 F.2d 896, 899 (5th Cir. 1992), the Supreme Court in *Bourjaily v. United States*, 483 U.S. 171 (1987) "the court need not hold a *James* hearing outside the jury's presence." In fact, the Fifth Circuit in *Fragaso* observed that "*James* has never required a hearing outside the presence of the jury." *Id*. at 899. The decision in "*Bourjaily* 'swept' away a major portion of our *James* decision." *Id*. at 899.

However, during trial, the court recognizes that it must "whenever reasonably practical, require the showing of a conspiracy and of the connection of the defendant with it [pursuant to Federal Rule of Evidence 801(d)(2)(E)] before admitting declarations of a coconspirator." *Fragaso*,

978 F.2d at 900. In complying with Rule 801(d)(2)(E), the court must determine whether there is sufficient "evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy.'" *Id.* at 899 (quoting *Bourjaily*, 483 U.S. at 175).

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendant Wilbur Tyrone Peer's Omnibus Motion to Dismiss, or, in the Alternative, Motion for Bill of Particulars, Motion to Strike, Motion in Limine, and Motion for Discovery and Inspection [142] is **DENIED** as explained above.

**SO ORDERED** this the 17th day of October, A.D., 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE